## Cantner, Appellant, v. James M. Castle, Inc.

Argued March 30, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John J. McDevitt, Jr.,* for appellant.

*E. Spencer Miller,* with him *Maurice G. Belknap,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 25, 1936:

Plaintiff brought an action against defendant for damages arising from her husband's death, caused by the explosion of a fire extinguisher. Her husband was employed as chief engineer by the Cornell Laundry Company. This company had a fire extinguisher called the "Stempel Extinguisher." There was evidence that on February 2, 1933, it sent *an* extinguisher to defendant company to be repaired and thereafter to be recharged with ingredients of bicarbonate of soda, sulphuric acid and other chemicals. On July 31, 1933, plaintiff's decedent took from a post a fire extinguisher in order to put out a small fire and when he inverted it, it exploded and inflicted on him fatal injuries.

The statement alleged "that in filling said fire extinguisher said defendant by its agent, servant or employee, was negligent in that: a. It did not clean the outlet located at the bottom of the fire extinguisher. b. It put too strong a solution of chemicals in said fire extinguisher. That as a result of said negligence said fire extinguisher exploded, thereby inflicting various serious injuries to the decedent resulting in his death." The defendant denied that it repaired or refilled the extinguisher which exploded and claimed that it refused to repair it because of its bad condition. The jury was unable to agree upon a verdict and was discharged. The court, upon defendant's motion, entered judgment upon the whole record. This appeal followed.

As to the first allegation that defendant "did not clean the outlet located at the bottom of the fire extinguisher," the court below, in its opinion supporting the judgment correctly said: "Nothing has been shown in the case on which to predicate a duty upon the defendant

either by contract, law or custom to 'clean the outlet located at the bottom of the fire extinguisher' or to otherwise inspect it." As to the second allegation that defendant "put too strong a solution of chemicals in the fire extinguisher," the court below correctly held that "the case of the plaintiff utterly failed, it being conceded that if the extinguisher were sound it would not have exploded."

The alleged improper repair of the fire extinguisher was not pleaded by the plaintiff, although some proof of the fire extinguisher's repair by the defendant was offered and received without objection. Since the question of variance between the pleadings and proof is not raised by the defendant in the court below, we will not consider that variance here. (See *Boyd v. Houghton & Co.,* 269 Pa. 273, 112 A. 530, and *Hanley v. Waxman,* 80 Pa. Superior Ct. 274.)

However, assuming the improper repair of the fire extinguisher to have been pleaded, the supporting proof must be adjudged inadequate. Plaintiff's proof in this respect consisted of statements made by the bookkeeper and other employees of the Laundry Company that the fire extinguisher which exploded had been sent to the defendant for repair. The bookkeeper went no further than to say that "an extinguisher" had some months prior been sent to the defendant company for repair along with others. No one testified that the extinguisher which exploded was the particular extinguisher which was sent to the defendant for repair. Neither the direct evidence offered, nor any inferential evidence, was sufficient to prove *negligent repair* of the extinguisher which had exploded. Plaintiff showed by a bill which was produced in evidence that "an extinguisher" had been repaired and refilled by the defendant on February 2, 1933, but this was not identified as the extinguisher which exploded. It was shown that the Laundry Company had forty or fifty extinguishers in its plant and that some of these it refilled itself.

Plaintiff's case was tried on an alternative theory, to wit, defendant was negligent either in the way it repaired the fire extinguisher or in failing to observe before it filled the container that it was in such a defective state as not to be strong enough to contain the chemical ingredients placed therein.

Appellant relies largely upon the testimony of James Troutman, who was a mechanic and "handy man" employed by the Cornell Laundry Company. He testified as to the fire extinguisher which exploded: "I was the one that put it there after it had been regenerated." He said that was the only extinguisher that had been taken away and repaired during the year 1933. He explained that he meant by that that this was the only extinguisher that was not repaired by employees of the Laundry Company. He said: "It was not repaired by anyone, to my knowledge, outside of the Castle people" (thereby meaning defendant). He also testified that the extinguisher in question was the only one "with a new cap put on." All of this witness's knowledge upon which he predicated his identification of the extinguisher in question was obtained from his observation as he performed his duties in the establishment, these duties being to carry to the office extinguishers to be sent out for repairing or recharging, and then carrying them back when refilled or repaired, and placing them in proper positions. Troutman did not testify that the extinguisher that exploded was the one that had been refilled by the defendant. The court said to the witness: "Q. As I understand, all you have to tell us about the matter is this— that some time, you cannot tell us when, you found an extinguisher in the office which had been repaired, and that extinguisher had a new casting at the top there, and that you took the extinguisher upstairs to the second floor and hung it opposite the tumbler." The witness answered, "Right." The court asked: "That is all you know about that? A. I know I took it up, and I know it came regenerated, like this, with a new top and a new

hose." The court then asked him: "That is all you know?" He answered: "Yes."

If the extinguisher which exploded was sent to the defendant company for refilling and it refilled it with chemicals that are usually used for that purpose, it cannot be held negligent because the extinguisher was not in a condition to receive such recharging. In sending this extinguisher for refilling, it was the duty of the Laundry Company to ascertain first if it was in condition to be refilled. For all that appears in this record, there is no more duty upon a person who refills, on order, a fire extinguisher to determine preliminarily whether it is in condition to take a normal refilling than there is upon a gasoline station proprietor to ascertain whether a gasoline tank is in condition to receive gasoline. To base a charge of negligence on the mere refilling of a fire extinguisher, pursuant to an order, a defect would have to be so patent as to make it obvious to the person doing the refilling that he could not, without endangering the safety of the person later using the extinguisher, place therein the refilling chemicals.

There is no evidence in this case that there was any duty on the part of the defendant company to carefully inspect this extinguisher before refilling it. This duty can not be inferred from the nature of the work it was asked to do, or from any contract between the parties. It was shown that the cost of recharging this extinguisher was one dollar and that no technical knowledge was required for refilling. Directions for refilling were on the extinguisher itself. There is no proof that the internal corrosion which it is alleged made this extinguisher too weak to contain the refilling charge was obvious to the person refilling the extinguisher. A chemist who testified for plaintiff, declared that on looking on the inside of the top of the extinguisher which had been blown off, there was evidence of corrosion. This evidence of corrosion was clearly not obvious to the person who refilled the extinguisher. The top portion of

the extinguisher was riveted onto its main body. No one refilling it could have seen the inside of it unless he used some special contrivance enabling him to do so. There is nothing which warrants a holding that such a duty of careful inside inspection was imposed on defendant before it carried out the order to refill.

Plaintiff's case failed. because of no proof of any breach of duty owing to plaintiff's decedent by defendant company. Conjecture cannot be accepted as a substitute for evidence. Judgment on the whole record was properly entered.

The judgment is affirmed.